IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP - 4 2020
CLERK, U.S. DISTRICT COURT
By_____
Deputy

DOUGLAS PAUL CARTER, §
§
    Petitioner, §
§
v. §   No. 4:19-CV-515-A
§
BOBBY LUMPKIN, Director,[1] §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
    Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Douglas Paul Carter, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Bobby Lumpkin, director of that division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

In August 2015 petitioner was indicted in Tarrant County, Texas, Case No. 1419623D, on one count of possession of a controlled substance, heroin, of one gram or more but less than

---

[1] Bobby Lumpkin has replaced Lorie Davis as the director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Thus, he is automatically substituted as the party respondent. Fed. R. Civ. P. 25(d).

four grams. (Clerk's R. 5-6, doc. 15-2.) The indictment also included a habitual-offender notice, alleging two sequential felony convictions. Petitioner's jury trial commenced on April 26, 2016. The state appellate court summarized the factual and procedural background of the case as follows:

> Officer Tyler Rawdon and Corporal White were together in a marked police unit when they located a white sedan that an undercover officer in an unmarked police car had radioed about. The undercover officer communicated that he had seen the driver of the white sedan commit two traffic violations before the white sedan pulled into the parking lot of a vacant business. [After pulling into the parking lot and stopping, the undercover officer saw some unknown person walk up to the passenger side of the vehicle.] Officer Rawdon spotted the vehicle as it was coming to a stop in the parking lot of the vacant business and noticed an older black male, later identified as Carter, standing at the passenger-side window of the white sedan. When Carter turned and saw the officers, he acted surprised, turned away from them, made a reaching motion to "his pants area," and then made "a distinct motion to his mouth." Based on his training and experience, as well as his location in a "high crime narcotics area" and Carter's walking up to a car that had pulled into the parking lot of an abandoned building, Officer Rawdon recognized Carter's motions as those made by someone who was trying to get rid of illegal narcotics by swallowing them. Officer Rawdon commanded Carter to get on the ground and to spit out what he had placed in his mouth. Carter complied, and Officer Rawdon saw Carter spit out two plastic bags containing what Officer Rawdon believed to be black tar heroin.

> A jury found Carter guilty of possession of a controlled substance of one gram or more but less than four grams, namely heroin. The trial court found the habitual-offender notice to be true and sentenced Carter to twenty-five years' imprisonment.

(Mem. Op. 2-3, doc. 15-11; Reporter's R., vol. 2, 243, doc. 14-4.)

The appellate court affirmed the trial court's judgment and the Texas Court of Criminal Appeals affirmed the appellate court's judgment as modified. (Docket Sheet 2.) Petitioner also filed a postconviction state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (SHR[2] 12-27, doc. 15-23 & Action Taken, doc. 15-21.) This federal habeas petition followed.

## II. ISSUES

In three grounds for relief, petitioner claims that he received ineffective assistance of trial counsel. (Pet. 6-7,[3] doc. 1.)

## III.   RULE 5 STATEMENT

Respondent believes that one or more of petitioner's claims are unexhausted and procedurally barred. However, to the extent the claims were not exhausted, a petition for a writ of habeas may be denied on the merits, notwithstanding a petitioner's failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2). Respondent does not believe that the petition is otherwise subject to the successive-petition bar or is untimely. (Resp't's Answer 5-8, doc. 6.)

---

[2]"SHR" refers to the state court record of petitioner's state habeas proceeding in WR-89,602-01.

[3]Because the petition and memorandum in support were filed as one document, the pagination in the ECF header is used to avoid any confusion.

## IV. LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter,* 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut this presumption by clear and convincing evidence. *Id.*

Further, when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas corpus court must "review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are

4

reasonable." *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018). Under those circumstances, a federal court should "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Id.*

## V. DISCUSSION

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 393-95 (1985); *Strickland v. Washington,* 466 U.S. 668, 688 (1984); *Anders v. California,* 386 U.S. 738, 744 (1967). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland,* 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered

mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where the state court has adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101. *See also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so. (internal quotation marks and citations omitted)).

Petitioner claims that trial counsel, Don Hase, was ineffective by

(1)  failing to argue a material fact to justify an article 38.23 jury instruction;

(2)  failing to know the law of reasonable suspicion to justify his detention under the Fourth Amendment; and

(3)  failing to move for a mistrial based on the trial judge's past representation of him.

6

(Pet. 6-7, doc. 1.)

In grounds one and two, which seem interrelated, petitioner asserts that counsel "seemed unfamiliar with the State's theory of the case"; failed "to obtain a firm command of the facts as well as the governing law" before requesting the article 38.23(a) instruction; and failed "to point to any or argue material issues of fact" to justify an article 38.23(a) instruction. (Pet. 14-15, doc. 1.) He appears to suggest that counsel should have interviewed the state's witnesses so as to *create* a disputed fact. (Id. at 15-16.) Specifically, he asserts that counsel

> failed to interview Officer Tyler Rawdon and Officer
> Corporal White and confirm the initial traffic
> violation, Carter's counsel failed to vor [sic] dire
> the jury as to the missing testimony of the violation
> of the traffic stop of the white sedan and deprived the
> jury from hearing that officer acted to make an illegal
> stop of the white sedan that led to the body search of
> Applicant, Douglas Paul Carter, which is how the
> officer's [sic] obtained illegaly [sic] the evidence to
> convict Applicant Douglas Paul Carter."

(Id. at 16.)

At trial, counsel requested an article 38.23(a) instruction, which was denied by the trial court. On direct appeal, petitioner claimed that the trial court erred by denying his requested instruction. The appellate court addressed the issue as follows:

> To be entitled to an article 38.23(a) instruction,
> a defendant must show that (1) an issue of historical
> fact was raised in front of the jury, (2) the fact was
> contested by affirmative evidence at trial, and (3) the
> fact is material to the constitutional or statutory
> violation that the defendant has identified as
> rendering the particular evidence inadmissible. When a

7

defendant successfully raises a disputed, material issue of fact, the terms of the statute are mandatory, and the jury must be instructed accordingly. Evidence to justify an article 38.23(a) instruction can derive "from any source," no matter whether "strong, weak, contradicted, unimpeached, or unbelievable." But it must, in any event, raise a "factual dispute about how the evidence was obtained." When the issue raised by the evidence at trial does not involve controverted historical facts, but only the proper application of the law to undisputed facts, it is properly left to the determination of the trial court.

During the charge conference, Carter requested a 38.23 jury instruction. His requested instruction and the argument related to the instruction are set forth below in their entirety:

> Judge, I'm asking for the jury to be instructed words -- these words: You are instructed that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas or the Constitution or laws of the United States of America shall be admitted into evidence against the accused in the trial of any criminal case. You are further instructed that our law permits the stop, arrest, detention[,] and search of a person by a peace officer without a warrant only when probable cause exists to believe that an offense against the laws of this state or the United States have been violated. An officer is permitted to make an arrest of a person if the officer has probable cause to believe that the person has committed or is committing an offense. By the term probable cause as used herein it is meant where the facts and circumstances within the officer's knowledge and of which he has trustworthy information [are] sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. Therefore, if you believe beyond a reasonable doubt that the peace officer lawfully obtained the evidence, you may consider it. If you have a reasonable doubt about that the

8

peace officer lawfully obtained the evidence
you may not consider it.

   And, Judge, we're asking that be
included in the Court's charge.

Looking just at Carter's requested jury instruction,
neither the trial judge, nor this court, could have any
idea of what specific fact or facts Carter believed
were in dispute.

   On appeal, Carter argues that Officer Rawdon's
testimony that Carter "had nothing to do with the
purpose for the detention of the occupants of the white
sedan, combined with the common-sense testimony that
[Carter] could just have easily been placing a candy
bar in his mouth are sufficient to raise a fact issue
regarding the legality of the detention" of Carter by
the police. Based on his argument on appeal, it appears
that what Carter wanted was a jury instruction on
whether the totality of the facts that Officer Rawdon
listed as his reasons for detaining Carter constituted
"reasonable suspicion" under the Fourth Amendment,
which amounts to an instruction focused on the law. But
as set forth above, to obtain a 38.23 instruction,
Carter was required to set forth a disputed, material
fact issue. Carter, however, failed to point to any
disputed material issue of fact, nor have we found any
evidence controverting the reasonable suspicion that
Officer Rawdon articulated for the detention: the area
involved was a "high crime narcotics area"; Carter had
walked up to the white sedan that had pulled into the
parking lot of an abandoned building; when Carter saw
the marked patrol unit, he turned away, reached into
"his pants area," and put his hand to his mouth; and
Officer Rawdon's training and experience in seeing such
actions "so many times in the past" when individuals
were trying to get rid of illegal narcotics by
swallowing them.

   Because none of the above testimony creates a
disputed fact issue,[4] Carter was not entitled to an
article 38.23 jury instruction. We hold that the trial
court did not err by refusing to include an article
38.23 instruction in the charge.

   [4]As pointed out by the State, "*the trial
court did not base its implicit finding of*

9

> reasonable suspicion on what [Carter] put in
> his mouth; rather, the trial court based
> reasonable suspicion on [Carter]'s suspicious
> act of putting something in his mouth
> combined with the other suspicious
> circumstances articulated by Officer Rawdon."

(Mem. Op. 3-6, doc. 15-11 (emphasis added) (citations omitted).)

In his state habeas application, petitioner claimed that counsel was ineffective by failing to "controvert the reasonable suspicion offered by the officer for the reason for the seizure" of petitioner. (SHR 17, 1, doc. 15-23.) The state habeas judge, who also presided at the guilt/innocence phase of trial, referred the case to a magistrate judge to resolve the issues and to prepare and enter factual findings and conclusions of law. (Id. at 67.) To that end, the magistrate judge entered the following factual findings relevant to petitioner's claim:

*Motion to Suppress*

4.   The Second Court of Appeals found that the arresting officer (Rowden) articulated facts establishing reasonable suspicion:

[We have not] found any evidence controverting the reasonable suspicion that Officer Rawdon articulated for the detention: the area involved was a "high crime narcotics area"; [Applicant] had walked up to the white sedan that had pulled into the parking lot of an abandoned building; when [Applicant] saw the marked patrol unit, he turned away, reached into "his pants area," and put his hand to his mouth; and Officer Rawdon's training and experience in seeing such actions "so many times in the past" when individuals were trying to get rid of illegal narcotics by swallowing them.

10

5.   Applicant's allegation that Officer Rawdon did not articulate facts sufficient to establish reasonable suspicion for a stop is not supported by the record.

6.   Applicant did not testify at the hearing on his motion to suppress.

7.   Applicant does not provide any evidence controverting Officer Rawdon's testimony.

8.   Applicant does not allege that evidence controverting Rowden's testimony exists.

9.   In his application, Applicant does not state how Trial Counsel could have presented "operative facts and controlling legal principle in his motion to suppress and his request for a fourth amendment jury instruction[.]"

10.  In his application, Applicant does not state how Trial Counsel could have "controvert[ed] the facts establishing reasonable suspicion for seizing [petitioner] articulated by the arresting officer."

11.  In his application, Applicant does not state how the outcome of his case would have been different [had] Trial Counsel presented more evidence or argument in support of his motion to suppress.

12.  In his application, Applicant does not state how the outcome of his case would have been different had Trial Counsel presented more facts and law when requesting his Fourth Amendment jury instruction.

(Id. at 32-33 (record citations omitted).)

Based on his factual findings, and applying the *Strickland* standard and relevant state law, the magistrate judge entered the following legal conclusions:

*Motion to Suppress*

7.   In a habeas corpus proceeding, the burden of proof

11

is on the applicant.

8.   In order to prevail, the applicant must present facts that, if true, would entitle him to the relief requested. Relief may be denied if the applicant states only conclusions, and not specific facts. In addition, an applicant's sworn allegations alone are not sufficient to prove his claims.

9.   Applicant has not shown that Trial Counsel's representation fell below an objective standard of reasonableness.

10.  Applicant has not shown that a reasonable probability exists that the results of the proceeding would have been different had Trial Counsel presented more evidence or argument in support of his motion to suppress.

11.  Applicant has not shown that a reasonable probability exists that the results of the proceedings would have been different Trial Counsel presented more facts and law when requesting his Fourth Amendment jury instruction.

12.  Applicant has not met his burden under *Strickland.*

13.  Applicant has not shown that Trial Counsel provided ineffective assistance.

(Id. at 35 (citations omitted).)

The state habeas court adopted the magistrate judge's findings and conclusions and the Texas Court of Criminal Appeals denied relief on the trial court's findings.

Petitioner has failed to present clear and convincing evidence to refute the state court's factual findings; thus, deferring to those findings, the state court's application of *Strickland* was not objectively unreasonable. Counsel has a duty to be familiar with the facts and the law of the case. *See Lee v.*

12

*Hopper,* 499 F.2d 456, 463 (5th Cir. 1974). "To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question" and "the disputed fact must be one that affects the determination of the legal issue." *Madden v. State,* 242 S.W.3d 504, 513, 517 (Tex. Crim. App. 2007). Counsel is not required to conjure facts where non exist. Petitioner's conclusory assertion, without more, that there exists, or potentially exists, some material, disputed fact(s) relevant to the legality of the initial traffic stop of the white sedan that could have been discovered by counsel and would have somehow rendered his detention and arrest unlawful is insufficient to establish ineffective assistance of counsel. *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) (providing "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value"). Officer Taylor testified that he observed the traffic violations and testified to the nature of the violations. (Reporter's R., vol. 2, 241-42, doc. 15-4.) Thus, reasonable suspicion existed to make the traffic stop of the white sedan. Nevertheless, petitioner's detention was not related to the traffic stop. After the officers arrived at the parking lot, petitioner's actions, alone, gave the officers reasonable suspicion of some separate illegal activity. Counsel is not

13

required to make frivolous objections, arguments, or motions. *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir. 1995).

Nor is petitioner entitled to relief under his third ground. Petitioner appears to assert that when the state moved to recuse trial judge Wayne Salvant, who represented petitioner in the mid to late 1980's in one or more criminal felony cases, counsel should have moved for a mistrial. (Pet. 7, doc. 1.) In his state habeas application, petitioner claimed that counsel was ineffective by "allowing the recusal of Judge Wayne Salvant." (SHR 19, doc. 15-23.) The magistrate judge entered the following factual findings relevant to petitioner's claim:

> *Recusal*
>
> 13. The guilt/innocence trial ended on April 27, 2016.
>
> 14. Judge Salvant signed the jury charge on guilt/ innocence on April 27, 2016.
>
> 15. The punishment trial concluded on April 29, 2016.
>
> 16. Judge Louis Sterns signed the judgment entered on April 29, 2016.
>
> 17. Judge Salvant signed the docket sheet on April 29, 2016.
>
> 18. There is evidence that Judge Salvant did not recuse himself[.]
>
> 19. [Applicant] has not shown that Judge Salvant recused himself.
>
> 20. Applicant has not alleged that the outcome of his case have been different had Trial Counsel objected to Judge Salvant's recusal.

(Id. at 32-34 (record citations omitted).)

14

Based on his findings, the magistrate judge entered the following legal conclusions:

*Recusal*

15. To prevail on a claim of ineffective assistance of counsel, the applicant must show counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability the results of the proceedings would have been different in the absence of counsel's unprofessional errors.

16. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established.

17. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffective claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

18. [Applicant] has failed to prove Judge Salvant recused himself.

19. Applicant has failed to show that the outcome of his case would have been different had Trial Counsel objected to the alleged recusal.

20. Applicant has not met his burden under *Strickland*.

21. Applicant has not shown that Trial Counsel provided ineffective assistance.

(Id. at 35-36 (citations omitted).)

Petitioner has failed to present clear and convincing evidence to rebut the state court's factual findings; thus,

deferring to those findings, the state court's application of *Strickland* was not objectively unreasonable. The record does not support petitioner's assertion that the state moved for recusal and/or that Judge Salvant recused himself. Although the judge did "step down" from the punishment phase, he did so based on the agreement of all the parties. (Reporter's R., vol. 4, 5, doc. 15-6.) On the second day of trial, the following exchange occurred:

> [PROSECUTOR]: May it please the Court, Your Honor, yesterday in going through the certified judgments of convictions for this Defendant, I discovered that you actually had represented this Defendant back in the mid to late '80s in some of his cases that did lead to felony convictions. Mr. Hase actually brought that to my attention last night when he was looking through the judgments and so we decided to bring it to your attention this morning.
>
> In discussing all this, Mr. Hase mentioned that his client, this Defendant, did actually state that he recognized you before this trial started as having represented him before, and so we continued at that point. So we just wanted to get that on the record and go ahead and get the Defendant on the record as to those facts and circumstances and his desire to waive any error or waive any appeal or mistrial at this point and go forward to completion of this trial with you on the bench.
>
> THE COURT: Very well. Mr. Hase.
>
> MR. HASE: Judge, that's true. We have talked to the client about this. The client was aware and as the Prosecutor and the Court and I have had a conversation before going on the record, and basically what we've all agreed to is in the event of a guilty verdict that Judge Louis Sturns would preside at the second phase of the trial if we get to that, and that he would be provided a transcript and be allowed to see what all's happened at the guilt phase. And I've talked about that with the State and I've talked about that with my client. And I'll ask you now, Mr. Carter, is that

16

acceptable to you?

THE DEFENDANT: Yes.

THE COURT: All right. Real good. And, Mr. Carter, it looks like I did represent you back in 1986, I guess. And I didn't recognize you.

THE DEFENDANT: It's been a long time.

THE COURT: That was a long time ago, wasn't it? All right. Well, I talked with Judge Sturns and he said that he would be more than willing to step in if we get to the punishment phase and preside at that. All right?

THE DEFENDANT: Yes, sir.

THE COURT: That's okay with you?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Real good. Okay.

(Reporter's R., vol. 3, 4-6, doc. 15-5.)

Following the guilty verdict, another exchange took

place regarding the matter:

[PROSECUTOR]: Yes, Your Honor. As stated earlier when we discussed the circumstance about your having represented this Defendant in the past, we, that being the Court, Defense counsel and I along with co-counsel, sat down and discussed the eventuality -- in the eventuality this Defendant is found guilty that Judge Sturns would step in then and hear this case. The State has no objection to that -- or rather Judge Sturns will step in and just hear the punishment phase of this trial. The State has no objection to that. Likewise, the State has no objection to Judge Sturns listening to a recording of the proceedings that's taken place in order to catch himself up and apprise himself of the details of the offense before we go into the punishment phase. So to all those circumstances the State has no objection to those.

THE COURT: Very well.

17

MR. HASE: That's our understanding as well. Just a matter of scheduling for Judge Sturns at this point.

THE COURT: Right. And I've talked with Judge Sturns. As a matter of fact I have him here. So after we break y'all can sit down and talk with him about scheduling. But I did inform him that I found out this morning that I had represented Mr. Carter back in 1985 and again in 1987 I saw. So I felt that it would be in the best interest for all that I not hear and sentence Mr. Carter to punishment on this case, if he had been found guilty. Since he has been found guilty, Judge Sturns has agreed to hear testimony concerning punishment since Mr. Carter had requested that the Court assess his punishment instead of a jury. Judge Sturns has agreed to do that. I've asked my court reporter to prepare the transcript, which she has, and we are giving it to Judge Sturns. He's going to review it, I think tonight, and it's a good possibility that this could be heard tomorrow. And probably no later than Friday. But as I said, I have him here in my chamber. When we recess, I want you folks to talk with him and y'all can schedule the hearing. All right.

[PROSECUTOR]: If it please the Court, Your Honor, in an abundance of caution, could we go ahead and put the Defendant under oath and get it from him that he is comfortable and okay with everything that's taking place?

THE COURT: Very good idea, Mr. Rodgers. Mr. Carter, let me ask you to raise your right hand.

(Defendant sworn)

THE COURT: All right. Now, you've heard all of the testimony and discussions that we've had concerning the punishment issues; is that correct?

THE DEFENDANT: Right.

THE COURT: And you understand that since I did represent you back in 1985 and once again in 1987, even though I don't recall that because it's been so long ago, I do want to in an abundance of caution -- and I know that your lawyer talked with you about this and you were ready to waive any type of conflicts that you thought might occur. But the Court just basically feels

18

that in an abundance of caution another judge should hear this, and I've asked and requested that Judge Sturns hear this matter.

Now, back in 1987 Judge Sturns was your original judge in that case. I don't know whether you recall that.

THE DEFENDANT: Yes, I do.

THE COURT: Since he was the judge and not one of the prosecutors or defense lawyers, I mean he still could actually hear this case. And I want to make sure that you don't have any concerns about this, and you are in agreement that Judge Sturns can actually hear the punishment phase of this trial; is that correct?

THE DEFENDANT: Yes, he can hear it.

THE COURT: All right. And I'll ask Mr. Hase who represents you, is that your understanding, Mr. Hase?

MR. HASE: That's my understanding, Judge.

THE COURT: And you agree with that also?

MR. HASE: Yes, Judge.

THE COURT: All right. Real good. Then we will do that. . . .

(Id. at 42-46.)

Nevertheless, counsel did move for a mistrial before the punishment phase commenced, which was denied by Judge Sturns. The following exchange took place:

THE COURT: Okay. Let's go back on the record -- or go on the record rather, in the State of Texas versus Douglas Paul Carter. And let me first state that I am sitting in this case as a result of the decision of Judge Salvant to remove himself from the case because he discovered during the course of the trial in this case that he had represented Mr. Carter before, and he asked me if I would step in and hear the punishment phase of the trial.

19

I have listened on yesterday to the transcript of
this trial proceeding. I've heard the testimony of all
the witnesses who have testified in the trial thus far.
And I also observed -- listened and noted that the
parties agreed to Judge Salvant stepping down and
requested that I proceed with the punishment phase of
the trial. So we're going to at this time proceed with
punishment in the case of the State of Texas versus
Douglas Paul Carter.

Now, Mr. Hase, are there any motions that you need
to make at this time or wish to make?

MR. HASE: Judge, what you've just stated is
correct to where we are to this point. But this
morning, when I met with my client, he asked me and I
will move for a mistrial because of the situation with
Judge Salvant previously represented this client. And
I'm citing what the client's research and he wants to
cite Article 2.03 neglect of duty under the Code of
Criminal Procedure. And, Judge, it's a conflict of
interest is our position right this moment and we are
asking the Court to grant a mistrial so that this case
can be tried anew from the git-go.

THE COURT: Okay. State care to respond?

MR. HASE: Just a second, Judge. Is that what you
wanted me to say?

THE DEFENDANT: I want you to bring this to the
Court's -- I want to bring this to the Court's
attention, that's the best part that I can come up with
I guess --

THE REPORTER: You need to speak up.

THE DEFENDANT: Yes, yes.

MR. HASE: Okay. Thank you, Judge.

THE COURT: Does the State care to respond?

[PROSECUTOR]: Your Honor, we covered this in great
detail on the record. I believe you actually overheard
when we covered this with the Defendant before we
continued with trial on Wednesday. This Defendant
actually was aware that Judge Salvant had represented

him before it actually came to the State's attention.
He even told his attorney, as I understand it, that he
recognized Judge Salvant as having been his attorney
back in 1985 before we even started the trial.

After pursuing or going into the trial, and before
the completion of the guilt/innocence phase, it was
brought to light the circumstances behind Judge Salvant
representing this Defendant. All parties, including
this Defendant, agreed to go forward. This Defendant
specifically said, I want Judge Salvant to finish this
part of the trial, and he had no objection to you
stepping in, Judge Sturns, thereafter.

So any error is waived there, in addition to the
fact that there is no harm here, no prejudice to this
Defendant. As you stated previously, and as all the
parties are aware, this was a trial before a jury in
the guilt/innocence phase of this trial. And so the
decision to find this Defendant guilty was from the
jury, not from the Judge. There's no harm or prejudice
here. We ask that you deny the motion.

THE COURT: All right. The Court will deny your
motion for mistrial.

(Id. at 5-8.)

Even if counsel's acts or omissions in this respect were

deficient, Judge Sturns sentenced petitioner to the minimum

sentence possible. Thus, petitioner cannot demonstrate any

prejudice.

For the reasons discussed,

The court ORDERS the petition of petitioner for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,

denied. The court further ORDERS that a certificate of

appealability be, and is hereby, denied, as petitioner has not

made a substantial showing of the denial of a constitutional

right or that the court's procedural ruling are debatable or wrong.

SIGNED September _____, 2020.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

22